IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NEWMAN LOLLIS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-12-CV-0392-D |
| | § | |
| HUD, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for initial screening pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The findings and recommendation of the magistrate judge are as follow:

I.

This is a civil action brought by Newman Lollis, appearing *pro se*, arising out of his eviction from certain real property owned by his mother following her death and the lender's refusal to sell the property to plaintiff in lieu of foreclosure. On February 6, 2012, plaintiff tendered a complaint to the district clerk and filed an application to proceed *in forma pauperis*. Because the information provided by plaintiff in his pauper's affidavit indicates that he lacks the funds necessary to prosecute this case, the court granted leave to proceed *in forma pauperis* and allowed the complaint to be filed. Written interrogatories then were sent to plaintiff in order to obtain additional information about the factual basis of this suit. Plaintiff answered the interrogatories on March 2, 2012. The court now determines that this case should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2).

II.

On or about April 25, 2003, plaintiff's mother, Marie Lollis, entered into a home equity conversion mortgage ("HECM"), also known as a "reverse mortgage," with Financial Freedom LLC ("Financial Freedom"). (*See* Doc. #11 at Pages 22-31). After Marie passed away in 2008, Financial Freedom initiated foreclosure proceedings against the property under the terms of the Deed of Trust. (*See id.* at Pages 24-25, ¶ 9 & 27-28, ¶¶ 20-21). As best the court can decipher his complaint and interrogatory answers, plaintiff appears to allege that he was contractually entitled to purchase the property for 95% of its appraised value, which he was prepared to pay with a $54,413.83 insurance check, and that his eviction from the property following the foreclosure violated his civil rights. (*See* Doc. #3 at Pages 2-3). In an unrelated claim, plaintiff alleges that law enforcement officers destroyed certain items of personal property while executing a search, seizure, and disposal warrant at his home. (*See* Doc. #11 at Pages 41-47). By this suit, plaintiff seeks $768,422.53 in damages and an order allowing him to purchase his mother's property for the amount of the insurance check.

A.

A district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes that the action:

    (i)    is frivolous or malicious;

    (ii)    fails to state a claim on which relief may be granted; or

    (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), and must plead those facts with

enough specificity "to raise a right to relief above the speculative level[.]" *Id.*, 127 S.Ct. at 1965. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Twombly*, 127 S.Ct. at 1964-65. The court must accept all well-pleaded facts as true and view the allegations in the light most favorable to the plaintiff. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007), *cert. denied sub nom.*, *Xavier Univ. of Louisiana v. Travelers Cas. Property Co. of America*, 128 S.Ct. 1230 (2008).

B.

Among the defendants named by plaintiff are: (1) the U.S. Department of Housing and Urban Development ("HUD"), the federal agency that administered the HECM program; (2) HUD Secretary Shaun Donovan; (3) HUD Director Sharon Lundstrom; (4) Dallas Mayor Mike Rawlings; (5) Dallas City Manager Mary Suhm; and (6) Dallas Police Chief David Brown. Federal agencies, such as HUD, cannot be sued for civil rights violations. *See Govea v. ATF*, 207 Fed.Appx. 369, 373, 2006 WL 3147324 at *3 (5th Cir. Nov. 2, 2006) (*Bivens* actions are unavailable against federal agencies); *Hoffman v. U.S. Dept. of Housing and Urban Dev.*, 519 F.2d 1160, 1165 (5th Cir. 1975) (HUD is not a "person" within the meaning of section 1983). As supervisors, Secretary Donovan, Director Lundstrom, Mayor Rawlings, City Manager Suhm, and Chief Brown cannot be sued unless: (1) they affirmatively participated in acts that caused a constitutional deprivation; or (2) they implemented unconstitutional policies that resulted in injury to plaintiff. *See Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 2443 (1993). Nowhere in his complaint or interrogatory answers does plaintiff allege that any of these defendants personally

participated in the eviction proceedings, the execution of the warrant, or the destruction of his personal property. In fact, other than the conclusory assertions that Secretary Donovan failed to "put[] in place oversight to prevent individuals [*sic*] rights from being violated[,]" and that Director Lundstrom "violat[ed] her fiduciary responsibility in getting Financial Freedom LLC to sign the insurance in a timely manner[,]" (*see* Doc. #11 at Page 5), plaintiff makes no allegations against any of these supervisory officials. His claims against Secretary Donovan, Director Lundstrom, Mayor Rawlings, City Manager Suhm, and Chief Brown should be summarily dismissed. *See Rivera v. Salazar*, 166 Fed.Appx. 704, 706, 2005 WL 3588443 at *1 (5th Cir. Dec. 30, 2005) (conclusory allegations insufficient to establish supervisory liability).

C.

Plaintiff sues Financial Freedom and the Federal National Mortgage Association ("FNMA") for civil rights violations, breach of contract, and wrongful eviction. The court initially observes that neither Financial Freedom, a Pennsylvania corporation, nor FNMA, a federally chartered corporation,[1] are "state actors" for purposes of section 1983 liability. Rather, these private entities can be sued for civil rights violations only if their conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); *see also Bass v. Parkwood Hospital*, 180 F.3d 234, 241 (5th Cir. 1999). When asked to explain how FNMA acted "under color of state law," plaintiff merely reiterated his claims of wrongdoing without alleging facts that even remotely suggest any kind of governmental action. (*See* Doc. #11 at Page 6). The court therefore determines that plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983.

---

[1] Although FNMA is regulated by the federal government, it is essentially a privately-owned mortgage banker providing secondary mortgage loans. *See Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 359 (5th Cir. 1977). The fact that FNMA is subject to federal regulation does not make its actions "fairly attributable" to the federal government. *Id.*; *see also Hayward v. Chase Home Finance, LLC*, No. 3-10-CV-2463-G, 2011 WL 2881298 at *3 (N.D. Tex. Jul. 18, 2011).

Plaintiff contends that Financial Freedom and FNMA breached the Deed of Trust by refusing to sell him the property for 95% of its appraised value, which plaintiff was prepared to pay with a $54,413.83 insurance check. (*See* Doc. #3 at Pages 2-3; Doc. #11 at Page 9). However, the Deed of Trust imposes no such requirement. Instead, it simply allows the borrower to sell the property thirty days before foreclosure "for the lesser of the balance or 95% of the appraised value[,]" and to apply the net proceeds of the sale toward the balance owed on the note. (*See* Doc. #11 at Page 25, ¶ 9(d)). Even if the Deed of Trust allows plaintiff to buy the property outright for 95% of its appraised value, there is no indication that he sought to do so at least thirty days before the foreclosure sale on May 4, 2010. Indeed, the insurance check tendered by plaintiff was not issued until July 14, 2010 -- more than *two months after* the foreclosure sale. (*See* Doc. #3 at Page 6). On these facts, plaintiff cannot state a claim for breach of contract.

Nor was the lender obligated to sell the property to plaintiff for $54,413.83 -- the amount of the insurance check issued to plaintiff and Financial Freedom after the property was damaged by fire. Under the Deed of Trust, fire insurance "shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender." (*See* Doc. #11 at Page 23, ¶ 3). The insurance provision continues:

> Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened.
>
> * * * *
>
> In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

(*Id.*). Although the insurance check was made payable to plaintiff and Financial Freedom jointly, plaintiff has not established any entitlement to these proceeds, much less any obligation on the part of Financial Freedom to accept the insurance proceeds toward the purchase price of the property.

Plaintiff's claim for wrongful eviction is barred by the *Rooker-Feldman* doctrine, which prohibits federal courts from reviewing, modifying, or nullifying final orders of state courts. It is apparent from the pleadings that plaintiff was evicted from the property by order of a state court. (*See* Doc. #3 at Page 4). Because a wrongful eviction claim would attack the validity of this state court judgment, it is barred from federal review. *See Magor v. GMAC Mortgage, L.L.C.*, No. 11-50145, 2011 WL 5244949 at *1 (5th Cir. Nov. 2, 2011) (barring federal civil suit which sought to challenge final state foreclosure judgment).

D.

That leaves plaintiff's claim against the Dallas County Constable's Office, the City of Dallas, and various law enforcement officers for damaging his personal property while executing a search, seizure, and disposal warrant. The intentional deprivation of property does not give rise to a civil rights claim unless the plaintiff can show that state remedies are inadequate. *See Parratt v. Taylor*, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981); *Brooks v. George Co.*, 84 F.3d 157, 165 (5th Cir.), *cert. denied*, 117 S.Ct. 359 (1996). Texas provides an adequate post-deprivation remedy by way of a common law cause of action for conversion. *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994); *see also Parr v. Ramsey*, No. 3-05-CV-0411-K, 2005 WL 3742820 at *4 (N.D. Tex. Nov. 1, 2005), *rec. adopted*, (N.D. Tex. Nov. 22, 2005) (considering civil rights claims seeking damages for wrongful confiscation, loss, or destruction of property during execution of

search warrant). As a result, plaintiff cannot maintain a cause of action under 42 U.S.C. § 1983.[2]

## RECOMMENDATION

Plaintiff's complaint should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2).

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 14, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[2] Even if plaintiff could maintain a civil rights action arising out of the destruction of his personal property, the Dallas County Constable's Office is not a legal entity subject to suit. *See Panthaky v. County of Dallas*, No. 3-01-CV-0066-P, 2004 WL 246203 at *5 (N.D. Tex. Jan. 7, 2004). Nor has plaintiff identified any official policy or custom of the City of Dallas that was a "moving force" in the violation of his civil rights. Without such an allegation, there is no basis for municipal liability. *See Guzman v. City of Dallas*, No. 3-09-CV-2426-B-BD, 2010 WL 4514369 at *2 (N.D. Tex. Aug. 31, 2010) (citing cases), *rec. adopted*, 2010 WL 4514364 (N.D. Tex. Nov. 9, 2010).